IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

RAMON NAVARRO,

       Plaintiff,

v.                                                                                                  No. CIV 01-1359 BB/ACT

CIGNA LIFE INSURANCE CO. OF
NEW YORK and SALOMON SMITH
BARNEY and SALOMON SMITH
BARNEY PENSION PLAN,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       This matter comes before the Court for review of the merits of a decision by Defendants denying Plaintiff's claim for long-term disability benefits. The case is an ERISA case, since the disability insurance policy giving rise to Plaintiff's claim was issued through his former employer. Plaintiff maintains he is disabled under the terms of the policy, due to a work-related back injury that aggravated a pre-existing condition, lumbar disk disease. Plaintiff filed a claim for disability benefits with Defendant CIGNA, which denied the claim. Plaintiff appealed that denial, but CIGNA again denied his claim. This lawsuit followed.

       As the Court's prior opinion in this case discussed, there was a question as to whether the Court should review the denial of benefits *de novo,* or simply to determine whether CIGNA's decision was arbitrary and capricious. The opinion suggested that under the terms of the plan of insurance, it appeared *de novo* review is appropriate. The Court then held a hearing to allow the parties to address this issue, and at that hearing Defendants conceded that *de novo* review is proper in this case. Therefore, that is the type of review the Court will conduct.

In the context of this case, conducting a *de novo* review means the Court must decide whether it agrees with the decision of the plan administrator (CIGNA), without giving any deference to CIGNA's prior denials of benefits. *See Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir. 1990). One issue that has arisen in this case is whether the Court should review only the materials that were before the plan administrator when CIGNA denied Plaintiff's claim, or whether additional evidence may be considered. Plaintiff has submitted excerpts from a deposition of Dr. George Swajian, D.O., taken on June 4, 2001, as well as copies of reports written by Dr. Swajian on December 20, 2000, February 12, 2001, May 15, 2001, and September 24, 2001. None of these materials was before the plan administrator at the time of the initial denial of benefits, which occurred on October 18, 2000, or at the time of the denial of Plaintiff's appeal, on January 10, 2001. The question before the Court, therefore, is whether this additional information should be considered in reviewing the plan administrator's decisions denying Plaintiff's benefits.

The Tenth Circuit has held that "it is the unusual case in which the district court should allow supplementation of the record." *Hall v. UNUM Life Ins. Co. of America*, 300 F.3d 1197, 1203 (10th Cir. 2002). In *Hall*, the Tenth Circuit noted a number of exceptional circumstances that might warrant the admission of additional evidence, including the complexity of the medical questions involved, whether there is a credibility issue concerning medical experts, the extent of the administrative record available for the court to review, the necessity to hear evidence concerning interpretation of the plan's terms rather than to determine historical facts, and situations where there is additional evidence that could not have been presented during the administrative process. The issue is complicated in this case by the fact that almost all of the evidence Plaintiff seeks to place before the Court was created after the administrative decisions

had already been made, and concerns Plaintiff's physical condition during the post-decision time period rather than his condition at the time his benefits were being administratively denied. If the Court's role in ERISA cases such as this one is to review the decisions of the plan administrator, it would seem appropriate to limit the Court's consideration to evidence concerning Plaintiff's condition at the time those decisions were made, especially where (as here) the condition is purportedly a degenerative condition. Fortunately, the Court need not decide whether to consider Dr. Swajian's materials in this case. As discussed below, even without taking into account Dr. Swajian's opinions, the Court finds Plaintiff was totally disabled, under the plan's definition, for the first two years following his eligibility date. The Court need not address whether Plaintiff continued to be disabled once the two years expired, because that question has not been addressed by the plan administrator.

      The disability plan in question defines total disability as follows, for a Class 1 employee such as Plaintiff: an employee will be considered totally disabled if, because of injury or sickness, he is unable to perform all the essential duties of his occupation; after monthly benefits have been payable for 24 months, the employee will be considered disabled only if he is unable to perform all the essential duties of any occupation for which the employee is, or may reasonably become, qualified by education, training, or experience. Thus, put simply, for the first two years following the required waiting period, an employee is entitled to disability benefits if he is unable to do the job he was doing at the time he was injured. After that two-year period, the employee is entitled to such benefits only if he cannot perform any job, with or without additional training.

Included in the administrative record submitted to the Court is an "Occupational Requirements" form completed by Plaintiff's supervisor.[1] According to this form, the job Plaintiff was performing at the time he was injured required him, among other things, to stoop and crouch frequently, to sit for five hours in an eight-hour workday, and to stand for two hours of each workday. These job requirements must be kept in mind when assessing the medical evidence submitted concerning Plaintiff's condition and his ability to work.

The main piece of evidence relied on by the plan administrator was a functional capacities evaluation ("FCE") performed on September 14, 2000. According to the FCE, Plaintiff was capable of working at a medium-level job, and his job was considered a light-level position. The FCE therefore concluded that Plaintiff was capable of performing his job. One thing the FCE did not do, however, was compare Plaintiff's physical abilities with the specific requirements of his job. As noted above, Plaintiff's position required him to sit for five hours during a typical workday. Nothing in the FCE indicates Plaintiff was capable of sitting that many hours a day. In fact, sitting for prolonged periods of time was the main thing Plaintiff could not do. The FCE rated Plaintiff as being able to sit occasionally, for less than two-and-one-half hours per day.[2] This is not close to the five hours of sitting required by Plaintiff's job. Furthermore, no evidence

---

[1] The Court is unable to cite to the administrative record by page number, exhibit number, or any other convenient means of locating documents. The plan administrator did not identify the exhibits in such manner, and the Court has not undertaken the task of labeling each document in the administrative record.

[2] A different portion of the FCE stated that Plaintiff demonstrated an ability to sit for only 5 minutes at a time, for a total of one hour in an eight-hour period. However, the FCE also stated that Plaintiff self-limited in the sitting task, and scored in the moderate range for exaggerated pain behaviors. The Court interprets the FCE, therefore, to mean Plaintiff is likely capable of sitting for more than five minutes at a time and more than one hour per day. The longest period of time noted in the FCE, however, is the less-than-two-and-a-half hours discussed above, well short of the required five hours.

was presented indicating that Plaintiff's job could be modified so he could perform more of it in a standing position rather than sitting. The FCE's general assessment that Plaintiff was capable of performing a moderate-level job is not helpful in deciding whether Plaintiff was able to perform the specific tasks of his particular job. For that reason, the Court does not find the FCE's general assessment persuasive, and instead has looked to the specific findings in the FCE concerning Plaintiff's physical abilities.

The medical evidence considered by the plan administrator is conflicting. Dr. Vitek, Plaintiff's treating physician during the period in question, diagnosed him as suffering from degenerative disk disease, spinal stenosis,[3] and lumbar back pain. [Dr. Vitek disability questionnaire] Dr. Vitek's opinion as of June 23, 2000, the date he signed the questionnaire, was that Plaintiff was not capable of performing his occupation, but might be capable of performing some other occupation. Dr. Woods also saw Plaintiff in the year 2000, and had seemingly inconsistent views as to the severity of Plaintiff's condition. On the one hand, Dr. Woods believed Plaintiff exhibited significant symptom magnification, and had a 0% impairment rating in June 2000. [Dr. Woods notes, January 31 and June 23, 2000] On the other hand, Dr. Woods also diagnosed Plaintiff's degenerative disk disease and spinal stenosis, stated that an epidural steroid injection might help Plaintiff, and stated that Plaintiff could return to work at a *sedentary* level. [*Id.*]

Despite the extensive administrative record submitted for the Court's consideration, the above items of evidence are the only parts of the record that shed light on Plaintiff's condition at the time he applied for disability benefits. The Court's view of the evidence is as follows: (1) it

---

[3]Spinal stenosis is the narrowing of the opening through which the spinal cord passes. As the opening narrows, pressure can be placed on the spinal cord.

seems clear that Plaintiff was magnifying his symptoms to some extent during his FCE and during his examinations by Dr. Woods; (2) it also is clear that Plaintiff does suffer from a condition that causes him pain in his lower back; (3) at the time of the FCE, Plaintiff was capable of performing a number of jobs of a sedentary, light, or moderate level; (4) the undisputed evidence is that Plaintiff's particular job required him to be seated for approximately five hours each workday; (5) there was no evidence that Plaintiff's job tasks could be modified to allow him to perform them while standing;[4] and (6) there was no evidence that Plaintiff would have been able to sit for anywhere close to the five hours per day required by his job.[5]  The Court therefore determines that Plaintiff was not capable of performing all the essential tasks of his duties at the time he applied for disability benefits.  Accordingly, the Court finds he was therefore totally disabled, as defined by the disability insurance plan, for the initial 24-month period of his eligibility for disability benefits.[6]

Based on the foregoing, the Court reverses the plan administrator's denial of disability benefits and orders that such benefits be paid in accordance with this opinion.  The Court has the discretion to award attorney's fees and costs to either party in an ERISA action, and Plaintiff has

---

[4] For example, it appears that a significant part of Plaintiff's job required him to use a computer.  There was no evidence that it would be feasible for Plaintiff to perform that part of his job while standing, without causing problems for his back.

[5] The Court is unwilling to extrapolate, from the mere fact that Plaintiff was magnifying his symptoms to some undetermined degree, that he actually could sit for the required five hours per day, or some period of time close to that.  Based on the evidence presented to the plan administrator, Plaintiff was not capable of doing so, and without some positive evidence to the contrary, the Court will find he could not sit for the length of time necessary to perform the essential tasks of his job.

[6] The Court expresses no opinion as to whether Plaintiff might meet the criteria required to remain totally disabled after benefits have been payable for 24 months.  That is an issue that must be addressed by the plan administrator in accordance with the procedures provided by the disability insurance plan.

requested such an award.  In deciding whether to make such an award, the Court is required to consider the factors outlined in *Gordon v. United States Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983).  At this point neither party has submitted any information concerning those factors. Therefore, Plaintiff is directed to file a memorandum in support of his request for attorney's fees, including an affidavit detailing the time spent on various tasks in this case, within thirty days of the date of this opinion.  Defendants shall then file a response to this memorandum within fourteen calendar days after service of the memorandum.

## ORDER

Pursuant to the foregoing opinion, it is hereby ORDERED that Plaintiff is entitled to payment of 24 months of disability benefits, in accordance with the disability insurance plan at issue in this case.  It is also ORDERED that the parties submit the required pleadings concerning a possible award of attorney's fees, as discussed in the opinion.  This opinion is not a final, appealable order; such an order or judgment will be filed following a decision on the issue of attorney's fees.

DATED October 1, 2003.

                                                BRUCE D. BLACK
                                                UNITED STATES DISTRICT JUDGE

**ATTORNEYS**:
**For Plaintiff**:
Narciso Garcia, Jr.
**For Defendants**:
Patricia G. Williams